UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CLARA BARNES,                                                MEMORANDUM AND ORDER

                Plaintiff,                                  CV 10-3902

        -against-                                           (Wexler, J.)

PILGRIM PSYCHIATRIC CENTER, NEW
YORK STATE OFFICE OF MENTAL
HEALTH, ALAN WEINSTOCK, DONNA
BRACKEN, MARY ELLEN TORRES, and
MICHAEL F. HOGAN, in their individual
and official capacities,

                Defendants.
----------------------------------------------------------X
APPEARANCES:

    Frank & Associates, P.C.
    By: Neil Frank, Esq.
    500 Bi-county Boulevard
    Suite 112N
    Farmingdale, NY 11735
    Attorneys for Plaintiff

    Eric T. Schneiderman, Attorney General of the State of New York
    By: Anne C. Leahey, Assistant Attorney General
    300 Motor Parkway, Suite 205
    Hauppauge, New York 11788
    Attorneys for Defendants

WEXLER, District Judge

       This is an action commenced by Plaintiff, Clara Barnes ("Plaintiff" or "Barnes"), who has been employed by the State of New York at the Pilgrim Psychiatric Center ("Pilgrim"), for approximately twenty-seven years. The amended complaint alleges a single cause of action pursuant to 42 U.S.C. §1983 ("Section 1983"). While the amended complaint is styled as a class

action, no class has been certified and the action is proceeding on behalf of the Plaintiff only. Plaintiff's Section 1983 claim alleges that the failure to provide her with notice and the opportunity to be heard prior to being assigned to report to a conference room in lieu of performing her usual duties, while receiving her full salary, violated of her rights pursuant to the Fourteenth Amendment to the United States Constitution. In addition to naming Pilgrim and the New York State Department of Mental Health as Defendants, Plaintiff also names as Defendants individual Pilgrim supervisors and administrators, and a Commissioner of the New York State Office of Mental Health. Presently before the court are the parties' cross-motions for summary judgment.

## BACKGROUND

I.  Facts

   A.  Plaintiff's Employment and the July 2010 Incident

Plaintiff has been employed at Pilgrim as a Licensed Practical Nurse since 1984. In July of 2010, an incident involving Plaintiff and registered nurse Mariann Serrano ("Serrano") took place. Plaintiff states that the incident occurred on July 16, 2011, Defendants state that it occurred on July 24 of that year. Plaintiff testified that she arrived at work on the date in question feeling ill, and sat down to rest. She states that a "verbal altercation" thereafter arose with Serrano. Serrano disputes Plaintiff's account. According to Serrano, she encountered Plaintiff on the day in question asleep on a couch near a patient area, when she should have been working. Serrano states further that when confronted, Plaintiff yelled and threatened Serrano, using foul language in front of staff, patients and visitors.

Defendant Nurse Administrator Donna Bracken ("Bracken"), one of Plaintiff's

supervisors, learned of the incident involving Serrano and Plaintiff and informed her supervisor, Defendant Mary Ellen Torres ("Torres"). Torres testified that she was told that Plaintiff was found sleeping on the job. Torres notified the Hospital's risk management department, and states that she was thereafter advised to remove Plaintiff from patient contact. In furtherance of this directive, Bracken was given the task of escorting Plaintiff to a conference room, located approximately twenty-five feet from Bracken's office. Plaintiff was advised that instead of performing her usual work duties, she was to report to and remain in the conference room during her working hours.

B. <u>Conditions in the Conference Room</u>

The conditions in the conference room to which Plaintiff was assigned are very much at issue. While Defendants refer to the room only as a conference room, Plaintiff refers to the room as a "Bubble Room." The term is alleged to derive from the fact that the conference room has a hallway-facing glass wall which affords those passing by a somewhat distorted bubble-like view of the room's interior. Plaintiff describes the room as an unpleasant and unclean place of confinement. Disciplined employees are allegedly required to remain in the room for continuous periods of time that can last as long as eight hours. Plaintiff alleges that during her period of confinement she was required to sit in a wooden chair while doing absolutely nothing. She states that she was deprived of, <u>inter alia</u>, the ability to leave, properly store food, or communicate with others. She states that the room was locked and that she was required to make a telephone call to obtain permission to leave the room for a bathroom break. Plaintiff states that while sitting in the conference room, she was in full view of her co-workers, and subject to humiliation as they observed her confinement.

Defendant Bracken's description of the conference room is completely at odds with that of the Plaintiff. Bracken states that the room was well ventilated by the building's central air conditioning system. While the room did not contain a kitchen or refrigerator, Bracken states that Plaintiff had full access to a nearby kitchen. She further states that Plaintiff was able to come and go as she pleased, and did not need permission to use the bathroom. The outside wall of the conference room is stated to be made completely of glass blocks. Such blocks are stated to obscure the view into the room so that Plaintiff could not be seen by those passing by. According to Bracken, Plaintiff spent her days in the conference room reading books, outside of the view of others, coming and going as she pleased.

Plaintiff remained assigned to the conference room until on or about September 1, 2010, when she returned to her duties. Although she was placed out of patient contact while assigned to the conference room, Plaintiff was paid her full salary and benefits. She continued to accrue leave, and did not lose any leave time already accrued.

C.     The September 2010 Disciplinary Charges

On September 15, 2010, approximately two months after the July incident and following Plaintiff's return to her normal duties, Plaintiff was given written notice that a disciplinary proceeding arising out of the July 2010 incident was being instituted (the "September 2010 Notice"). That proceeding charged Plaintiff with yelling at Serrano and violating the Pilgrim Psychiatric Center Respect and Interpersonal Behavior Policy. The penalty proposed in the September 2010 Notice was a twelve week suspension without pay, or the monetary equivalent thereof. Plaintiff was advised that the penalty would take effect fourteen days from the service of the notice of charges. She was also informed of her right to grieve the penalty proposed.

In an agreement dated March 2, 2010, Plaintiff settled the charge set forth in the September 2010 Notice by agreeing to a fine of $1,097, which was agreed to be deducted from her paycheck. Plaintiff also agreed to a loss of ten days of leave accrual. The term of suspension without pay was agreed to be held in abeyance for twelve months, and was not to be implemented unless Plaintiff repeated the same or similar conduct charged in the September 2010 Notice.

D.  Plaintiff's Union Status and Relevant Portions of the CBA

Plaintiff is a member of the Civil Service Employees Association, Inc. ("CSEA"). The terms of her employment are governed by the Agreement between the CSEA and the State of New York - Institutional Services Unit (the "CBA"). As a civil service employee, the terms of Plaintiff's employment would be governed in general by Article 75 of the New York State Civil Service Law (Article 75). Section 76(4) of the Civil Service Law provides that Section 75 "may be supplemented, modified or replaced by agreements negotiated between the state and an employee organization . . . ." N.Y. Civ Serv. L. §76(4). Thus, Section 75 rights can be modified or replaced by the terms of a collective bargaining agreement. See Ciambriello v. County of Nassau, 292 F.3d 307, 314 (2d Cir. 2002).

Here, Plaintiff's bargaining unit, the CSEA Institutional Services Unit, has made the choice to provide for its own disciplinary procedures. Those procedures are set forth in Article 33 of the CBA ("Article 33"). See CSEA Institutional Services Unit Contract 2007-2011.[1] Thus, Article 33 states that its provisions are provided "in lieu of the procedure specified in the Civil

---

[1]  The text of the CBA is available online at:
www.goer.ny.gov/Labor_Relations/Contracts/Current/cseaisu

Service Law Sections 75 and 76."

The Disciplinary procedures set forth in Section 33.3 of Article 33 speak to notice and hearings to which disciplined employees are entitled. Section 33.3(a) entitled "Notice of Discipline," provides for service of a "notice of discipline" upon employees in cases where the employer "seeks the imposition of a written reprimand, suspension without pay, a fine not to exceed two weeks' pay, loss of accrued leave credits, reduction in grade, or dismissal from service . . . ." CBA §33.3(a)(1). Such notice is required to be made in writing and must "contain a detailed description of the alleged acts and conduct including reference to dates, times and places." Id.

The CBA discusses suspension of employees without pay, as well as the option of temporary reassignment. The latter option is discussed in Section 33.3(h) of the CBA, entitled "Temporary Reassignment." With respect to such action, the CBA provides that where the employer informs an employee of a temporary reassignment, "and prior to exhaustion or institution of the disciplinary grievance procedure," the employee is to be notified in writing of the proposed reassignment. CBA §33.3(h)(1). The CBA then gives the temporarily assigned employee the right to "elect in writing to refuse such temporary reassignment and be suspended without pay." CBA §33.3(h)(1).

The CBA states that the notice of discipline provided for in Section 33.3(a) is to be provided to the employee no later than seven calendar days following either a suspension without pay or temporary reassignment. It states further that employees may be suspended without pay or subject to temporary reassignment only if there is "probable cause to believe that the employee's continued presence on the job represents a potential danger to persons or property or would

severely interfere with operations." CBA §33.3(g)(3). In the case of temporary reassignment, the failure to timely serve a notice of discipline allows the employee to return to her actual assignment until service of the proper notice of discipline. CBA §33.3(g)(3).

    E.    <u>Testimony Regarding Construction of the CBA</u>

The deposition of Manuel Mangual, ("Mangual") a full time CSEA employee, is before the court. Mangual has been employed in a full time union capacity since approximately 1997. He testified at length about the meaning of the CBA and, in particular, about the disciplinary procedures set forth in Section 33. Mangual stated, in general, that so long as an employee's salary was not affected, the CBA permits immediate removal from patient contact, for an unspecified period of time, without prior notice and the opportunity to be heard.

As to the CBA's used of the term "temporary reassignment," Mangual testified that such reassignment does not refer to removal of an employee from patient contact by assigning that employee to report to a conference room. Instead, Mangual testified that the CBA's reference to "temporary reassignment" refers to a change in position or status. Such reassignments were stated to fall within the terms of the CBA, and might lead to grievances where, for example, a proposed reassignment violated seniority rules. Mangual distinguished CBA "temporary reassignments," that require prior written notice, from a reassignment removing an employee from patient contact pending an investigation. He stated that the latter type of reassignment could be made to protect employees or patients.

When asked specifically whether an action assigning an employee out of patient contact to a conference room, without prior notice and hearing, but on full salary status, was permissible under the terms of the CBA, Mangual responded in the affirmative. Thus, according to Mangual,

assignment to a conference room for an unspecified period of time, prior to the institution of charges, and without a concomitant loss in salary or benefits was not disciplinary action covered by Article 33. Instead, Mangual indicated that such reassignment was a matter left to the discretion of the employer and did not implicate the notice and hearing requirements of the CBA. While conceding that an employee placed in a conference room pending an investigation would be entitled to some kind of verbal notice as to the fact of an ongoing investigation, Mangual stated that such notice was not governed by the disciplinary procedures set forth in Article 33 of the CBA.

Time and again during the course of his deposition, Mangual stated clearly that placement of a full salaried employee in a conference during an ongoing investigation, prior to the filing of any written disciplinary charge, was not a matter covered by the terms of the CBA. When asked how long such a period of separation from patient contact could occur, Mangual did not state any time in particular. He did indicate, however, that such a period could continue for a matter of days or months.

II.   The Cross-Motions

The parties have cross-moved for summary judgment. Recognizing the importance of the meaning of the CBA to define the contours of any Constitutionally protected property right, the parties take differing positions as to Plaintiff's rights under that agreement.

In support of their motion for summary judgment, Defendants argue that reassignment to a conference room pending investigation does not constitute discipline that triggers the notice requirements of the CBA. Since Plaintiff cannot therefore claim a violation of any right under the CBA, Defendants argue that she can state no claim for deprivation of a Constitutionally

protected property right. In support of her motion for summary judgment, Plaintiff argues that the CBA was clearly violated by her temporary reassignment to the conference room without prior written notice, and that such violation supports the claim of deprivation of a Constitutionally protected property right. Defendants counter that even if the CBA was violated, such violation cannot support a Section 1983 claim where, as here, the Plaintiff remains on full salary and benefit status.

After setting forth applicable legal principles the court will turn to the merits of the motions.

## DISCUSSION

I.   Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

II.   Stating A Due Process Claim Under Section 1983

When determining whether a state employee states a Section 1983 claim for denial of procedural due process rights, the first step is determining whether the employee possessed a liberty or property interest. Second, the court determines what process was due before any deprivation of that right. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002); see

O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005).

Property interests are not created by the Constitution, but instead, are created and defined by existing rules or understandings "stemming from an independent source," which source supports a "legitimate claim of entitlement." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). The court looks to state law to determine the source of a Constitutionally protected property right. Such rights are often contained in collective bargaining agreements governing an employment relationship with the State. See id.

Once the property right is identified, the court decides whether that right rises to the level of a Constitutionally protected right. This is an issue of federal law, and not state law of contract. Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir.1991) (citation omitted). The mere identification of a state law right does not necessarily require a finding that the right identified is protected by the Constitution. Thus, not every contractual benefit rises to the level of a Constitutionally protected right. Id. at 782; Adams v. New York State Educ. Dept., 752 F. Supp.2d 420, 454 (S.D.N.Y. 2010). When determining whether a right is protected by the Constitution, the court considers "whether the interest involved would be protected under state law and must weigh 'the importance to the holder of the right.' " Ezekwo, 940 F.2d at 783.

If, and when the court determines that the due process clause is implicated, the final question is what process is due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541(1985). That question too is resolved by application of federal law, and not by any state contractual provision. Ciambriello, 292 F.3d at 319. The nature of any required pre-deprivation hearing is determined by balancing three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Ciambriello, 292 F.3d at 319, quoting, Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

III.   Disposition of the Motions

    A.   Disputed Facts and Those Not in Dispute

The parties disagree as to several facts. Thus, there is no agreement as to the exact date of the incident, or the precise nature of Plaintiff's or Serrano's behavior. Nor is there agreement as to the conditions of the conference room to which Plaintiff was assigned. Most importantly, the parties disagree as to whether Plaintiff's reassignment to the conference room constitutes "discipline" triggering the notice requirement of Section 33 of the CBA. Plaintiff alleges that the plain language of the CBA dictates the finding that her reassignment to the conference room was a CBA defined "temporary reassignment." Relying on the deposition testimony of CSEA representative Mangual, Defendants argue that the assignment of Plaintiff to the conference room was nothing more than a reassignment pending an investigation. Such action, taken without economic consequence to the employee, is argued to fall within the employer's discretion and to implicate no CBA-mandated notice.

While the material issue of CBA interpretation is in dispute, certain important facts are not in dispute. First, there is no doubt that there was at least a "verbal altercation" between Plaintiff and Serrano. There is also no doubt that Plaintiff was assigned to report to the conference room from sometime at the end of July 2010, until the beginning of September 2010. It is also clear that Plaintiff did not receive written notice of such reassignment prior to being told

to report to the conference room. During the time period when Plaintiff was assigned to the conference room, she remained out of patient contact, and did not perform her usual duties. Instead, she was required to report and remain in the conference room during working hours. Most importantly, there is no question that Plaintiff received her full salary during her period of assignment to the conference room. During that time period she suffered no diminution in rank, seniority or benefits.

B.  Plaintiff's Motion

Plaintiff relies on Article 33 of the CBA as the state law source of her protected property right. If the action taken with respect to Plaintiff was, indeed, a temporary reassignment within the meaning of Article 33, Plaintiff would at least satisfy the first step in alleging a property right.

i.  Ambiguity in Article 33 Precludes Judgment in Favor of Plaintiff

Plaintiff's motion must fail because, as the court has found above, there is a factual dispute as to the meaning of the term "temporary reassignment," as used in the CBA. Because Plaintiff cannot show the absence of a question of fact as to whether or not her reassignment was covered by the CBA, she cannot establish, as a matter of law, that she had a legitimate claim of entitlement to support her alleged property right. Accordingly, the court denies Plaintiff's motion for summary judgment.

C.  Defendants' Motion

Defendants' motion is two-fold and argued in the alternative. First, Defendants argue that the CBA is unambiguous and does not apply where, as here, an employee is assigned to report to a conference room prior to the filing of disciplinary charges. Thus, it is argued that Plaintiff can claim no violation of any right to notice under the CBA. Second, Defendants argue that even if

the assignment to the conference room triggered the CBA mandated notice requirement, which was in fact violated, Plaintiff's full salary status defeats the claim of a Constitutionally protected property right.

    i.    <u>Ambiguity in Article 33 Precludes Judgment on Defendants' First Ground</u>

The court must deny Defendants' motion to the extent that it is based on the argument that Article 33 is unambiguous and as a matter of law, does not apply to Plaintiff's reassignment to the conference room. The court's denial as to this ground is based upon the same reasoning that required denial of Plaintiff's motion. Specifically, there exists a material question of fact as to whether Plaintiff's assignment to the conference room constitutes a temporary reassignment under the terms of the CBA. Therefore, it is impossible to state, as a matter fo law, that Plaintiff's claim of right stemming from an alleged violation of Article 33 fails to state a property right.

    ii.    <u>Even Assuming a CBA Violation of Article 33<br>Plaintiff Fails to State a Constitutionally Protected Right<br>And Defendants are Therefore Entitled to Judgment</u>

As to Defendants' second ground, the court will assume, for purposes of this decision, that Plaintiff's reassignment to the conference room did indeed constitute a notice-triggering CBA "temporary reassignment," and that such notice was not provided. The assumed existence and denial of such a right under the CBA does not, however, necessarily lead to the conclusion that such a right constitutes a Constitutionally protected property interest. Indeed, as discussed below, Second Circuit case law is to the contrary, and requires that the court grant Defendants' motion.

There is no doubt that government employees covered by laws and /or agreements

prohibiting discharge without cause possess a Constitutionally protected property right in continued employment. O'Connor, 426 F.3d at 196. It is also clear that procedural due process protections apply to acts that fall short of termination, such as suspension without pay or diminution in rank. Id. at 197. Thus, an employee who can claim a state or contract law entitlement to just cause suspension or termination satisfies the first step in pointing to a property right, and also the second step of stating claim for deprivation of a Constitutionally protected right.

As to other employment actions, whether characterized as "disciplinary" or not, an employee such as Plaintiff may be able to show a state law or contractual right. However, even assuming the existence of such a right, the court must determine whether the right relied upon rises to the level of Constitutional protection. Because Plaintiff suffered no diminution in wages, benefits or rank, the right alleged here must be the right to continue to perform one's usual duties. As to this step of the inquiry, the Second Circuit has noted that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties." O'Connor, 426 F.3d at 199; see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-45 (1985)(noting that employer wishing to avoid due process notice requirements may simply suspend employee with pay).

Several district court decisions have interpreted O'Connor to bar the finding of a Constitutionally protected property right where, as here, an employee is reassigned from his or her usual duties, but remains on full salary and benefit status. Thus, it has been held by courts in this district that employees who are reassigned to report to locations where they are prevented from performing their usual functions, while continuing to receive full salary and benefits, state

no claim for deprivation of a Constitutionally protected right. See Pappas v. New York City Bd. of Educ., 2011 WL 128509 *6 (E.D.N.Y. 2011) (defendants correctly argue that plaintiff "was not deprived of a property interest when she was [reassigned] because she continued to draw a full salary"); Norgrove v. New York City Dept. of Educ., 2011 WL 441678 *4 (E.D.N.Y. 2011) (same); Ramberran v. Dellacona, 2008 WL 905217 at *1–2, *4 (E.D.N.Y. Mar. 31, 2008) (employee who continues to be paid cannot "sustain a claim for deprivation of property without due process" even if relieved from job duties);Montefusco v. Nassau Cnty., 39 F. Supp.2d 231, 239 (E.D.N.Y.1999) (suspension with pay does not deprive teacher of a constitutionally protect property interest).

Other district courts within the Second Circuit are in agreement. See Adams v. New York State Educ. Dept., 752 F. Supp.2d 420, 453 (S.D.N.Y. 2010); Gugliotti v. Miron, 2010 WL 3025223 at *6–9 (D. Conn. 2010) (Plaintiff has no constitutionally protected property interest "in performing his job duties, without an accompanying pecuniary loss"); Deal v. Seneca Cnty., 2008 WL 2020004 at *3–4 (W.D.N.Y. May 8, 2008) (rejecting alleged property right to specific working conditions on ground that Second Circuit law states that "nothing less than suspension without pay constitutes a protected property interest").

In light of the foregoing, the court declines Plaintiff's invitation to rely on cases decided in other circuits. See Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2008); Parrett v. City of Connersville, Ind., 737 F.2d 690 (7th Cir. 1984). Instead, the court joins other district courts in this Circuit and holds that while there exist protected property rights to notice and hearing prior to being terminated or suspended without pay, there is no Constitutionally protected right to performing certain duties during the course of one's employment. Thus, even assuming that the

CBA disciplinary procedure applied to Plaintiff's conference room assignment, and further assuming that the CBA was violated by the failure to provide Plaintiff with written notice of her reassignment, the retention of her full salary and benefits during the period of reassignment dictates the holding that Plaintiff suffered no deprivation of any Constitutionally protected right. Accordingly, she fails to state a Section 1983 for deprivation of due process pursuant to the Fourteenth Amendment to the Constitution.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motions appearing at docket numbers 47 and 48 and to thereafter close the file in this matter.

SO ORDERED

/s/ LEONARD D. WEXLER
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       May 15, 2012